IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JUDY ROSE NORMAN-NUNNERY,

                  OPINION AND ORDER

    Plaintiff,

                   08-cv-320-bbc

  v.

MADISON AREA TECHNICAL COLLEGE,
CAROL BASSETT, WILLIAM STRYCKER and
JACKIE THOMAS,

    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

  Plaintiff Judy Rose Norman-Nunnery applied for a job with defendant Madison Area Technical College as a disability resources services administrator but she never received an interview even though she says she was well qualified for the position. Plaintiff believes that defendants did not seriously consider her because she is an African American and because her husband was the lawyer for a woman who had sued the college for race discrimination. She brings her claim under Title VII of the Civil Rights Act, 42 U.S.C. § 1981, the equal protection clause and her constitutional right of intimate association.

  Now before the court is defendants' motion to dismiss the case for plaintiff's failure to state a claim under Fed. R. Civ. P. 12(b)(6), which will be granted in part and denied in

1

part. I agree with defendants that plaintiff cannot prevail on her retaliation claims under § 1981 and Title VII because those statutes protect individuals who are subject to retaliation for their own actions, not the conduct of their spouses.

However, plaintiff may proceed with her claims for race discrimination and infringement of her right of intimate association. Defendants seek dismissal of plaintiff's discrimination claims on the ground that she did not include enough factual detail in her complaint, but this argument is inconsistent with pleading standards in this circuit, even after <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007).

Finally, although the legal basis for plaintiff's intimate association claim is somewhat uncertain, defendants do not develop any arguments regarding the scope of the right of association, but instead focus on arguments that mischaracterize the nature of plaintiff's claim. Thus, the answers to the difficult questions surrounding that claim will have to wait until a later stage of the case.

OPINION

Plaintiff's complaint can be grouped into three types of claims for the purpose of defendants' motion to dismiss: (1) racial discrimination; (2) retaliation for engaging in conduct protected by Title VII; (3) and infringement of plaintiff's constitutional right of intimate association. Defendants challenge the legal sufficiency of each of these claims.

2

The defendants identify different deficiencies for each claim, with one exception. On multiple occasions in their brief, defendants say that plaintiff has failed to state a claim upon which relief may be granted because she does not identify which statute she wishes to proceed under, for example, 42 U.S.C. § 1981 or § 1983. That objection is without merit. The Court of Appeals for the Seventh Circuit has stated time and again that a complaint is not subject to dismissal simply because it includes an incorrect legal theory or no legal theory at all. Jogi v. Voges, 480 F.3d 822, 826 (7th Cir. 2007) ("It is established, however, that complaints need not plead legal theories."); Simpson v. Nickel, 450 F.3d 303, 305 (7th Cir. 2006) ("One pleads 'claims' (which is to say, grievances) rather than legal theories."); Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041 (7th Cir. 1999) ("The courts keep reminding plaintiffs that they . . . don't have to plead legal theories."); Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992) ("[T]he complaint need not identify a legal theory, and specifying an incorrect theory is not fatal.") Thus, any failure by plaintiff to match her facts with § 1983 or § 1981 is not fatal to her claim so long as the facts she alleges otherwise satisfy Fed. R. Civ. P. 8.

   A. Discrimination Claims under Title VII, §1981 and the Equal Protection Clause

In her complaint, plaintiff alleges that her "race was a factor in her not being considered (i.e., interviewed) for the DRSA and/or her not being hired for the position," that

3

"[t]hrough the acts and conduct of Defendants Strycker, Thomas and Bassett, Plaintiff was not treated on equal or similar terms in her pursuit of an employment contract for DRSA position because of her race" and that she "was precluded from entering into an employment contract because of her race." Cpt., dkt. #1, ¶15.  Defendants say that these allegations are not sufficiently detailed to state a claim upon which relief may be granted for race discrimination under Title VII, § 1981 or the equal protection clause.

Defendants have an uphill battle in prevailing on that argument because the allegations in plaintiff's complaint are the same allegations that the court of appeals has held are sufficient to satisfy Fed. R. Civ. P. 8.  In Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998), the court held that a plaintiff alleging racial discrimination needed to say no more than, "I was turned down a job because of my race" to satisfy Rule 8, a standard the court confirmed in subsequent cases.  E.g., Brown v. Budz, 398 F.3d 904, 916 (7th Cir. 2005).  Without saying so explicitly, defendants appear to believe that the standard from Bennett was overruled by Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), in which the Supreme Court "retired" the oft-cited language from Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  In addition, the Court stated that Rule 8's requirement that a complaint to state the "grounds for relief" means that "[f]actual allegations must be

4

enough to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atlantic, 127 S. Ct. at 1974.

To be sure, Bell Atlantic has added a degree of uncertainty regarding the practical application of Rule 8 in any given case. Even the Court of Appeals for the Seventh Circuit has given somewhat mixed messages regarding the proper interpretation of Bell Atlantic. In some instances, the court appears to suggest that Bell Atlantic changes nothing and that a complaint is still sufficient so long as it gives the defendants enough notice of the claim to allow them to file an answer. In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation, 491 F.3d 638 (7th Cir. 2007) (interpreting Bell Atlantic to mean only that "complaint must contain 'enough factual matter (taken as true)' to provide the minimum notice of the plaintiffs' claim that the Court believes a defendant entitled to"); Airborne Beepers & Video, Inc. v. AT&T Mobility LLC, 499 F.3d 663 (7th Cir. 2007) ("[W]e understand the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.") In other instances, the court of appeals has acknowledged that Bell Atlantic "retooled federal pleading standards," repeating (but not further elucidating) the Supreme Court's statement that a complaint must be "plausible on its face." Killingsworth v. HSBC Bank Nevada, N.A., 507 F.3d 614 (7th Cir. 2007); see also EEOC v. Concentra Health Services, Inc., 496 F.3d 773 (7th Cir. 2007).

I agree with defendants that Bell Atlantic changed pleading standards in federal court to some extent. Those cases in which the court of appeals has stated that the standard is still just "notice" ignore the central thrust of Bell Atlantic, which is that a complaint must provide "not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Bell Atlantic, 127 S. Ct. at 1965. At the same time, it is clear that the new standard is context sensitive. The Court jettisoned the language from Conley in an extremely complex antitrust case, potentially involving enormous amounts of discovery. Although the Court did not necessarily limit its ruling to "complex" cases, it is reasonable to infer that the threshold for "plausibility" in a much simpler case like this one is correspondingly easier to satisfy. Limestone Development Corp. v. Village of Lemont, Illinois, 520 F.3d 797 (7th Cir. 2008) (stating that "Bell Atlantic must not be overread" and that "how many facts are enough will depend on the type of case"). See also Erickson v. Pardus, 127 S. Ct. 2197 (2007) (in case decided after Bell Atlantic, omitting any reference to "plausibility" requirement in context of discussing whether complaint alleging Eighth Amendment violation satisfied Rule 8).

Defendants say that plaintiff's allegations of race discrimination are not plausible because plaintiff admits that she was never interviewed for the position and she does not allege that any of the defendants knew what her race was. This argument is not without merit, but I believe it goes beyond what Bell Atlantic requires and it is not supported by

6

circuit precedent.

"Plausibility" is not code for pleading with particularity. Although the Court did not provide detailed instructions for applying the standard, the best reading is that it simply means that the complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Bell Atlantic, 127 S. Ct. at 1969. By alleging that defendants discriminated against her because of her race, plaintiff is necessarily alleging that they knew what her race was. One does not discriminate by accident. Further, it is not implausible to infer that defendants knew of plaintiff's race through means other than the interview process.

As the court of appeals has explained many times, the detailed facts defendants demand may be fleshed out in discovery. Obviously, if plaintiff is unable to prove at summary judgment or at trial that defendants knew she was an African American, her claim will fail. However, she has met the minimum requirements of Fed. R. Civ. P. 8. If defendants' view of pleading standards prevailed, it would be virtually impossible for any applicant without inside knowledge of the defendants' decision making process to survive a motion to dismiss. That goes far beyond what the Court held or intended in Bell Atlantic.

In any event, the court of appeals held in Concentra, 496 F.3d 773, that the liberal pleading standard for racial discrimination found in Bennett survives Bell Atlantic. Defendants argue that this case is distinguishable from Concentra, but they point to no

language from that case or any other suggesting that the pleading requirements for a race discrimination claim differ from case to case. Id. ("[O]nce a plaintiff alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim.") In the absence of specific authority to the contrary, I must adhere to the rule set forth in Concentra. Accordingly, defendants' motion to dismiss must be denied with respect to plaintiff's claims of race discrimination under § 1981, Title VII and the equal protection clause.

### B. Retaliation under Title VII and § 1981

Plaintiff's theory of retaliation is that defendants refused to interview or hire her in part because her husband was the lawyer for a woman who had previously sued defendants MATC and Strycker for race discrimination under Title VII. Jimenez v. Madison Area Technical College, 321 F.3d 652 (7th Cir. 2003). That statute prohibits "an employer [from] discriminat[ing] against any of his . . . applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Section 1981 gives "all persons" in the United States "the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." (On its face, § 1981 does not address

8

the problem of retaliation in the workplace, but the Supreme Court held for the first time last term that § 1981 encompasses retaliation claims, including those related to employment. CBOCS West, Inc. v. Humphries, 128 S. Ct. 1951 (2008), aff'g Humphries v. CBOCS West, Inc., 474 F.3d 387 (7th Cir. 2007).)

The facts alleged in plaintiff's complaint raise two questions about the merit of her retaliation claims. First, does Title VII or § 1981 protect an applicant from retaliation for the conduct of her spouse or are those statutes limited to the applicant's own complaints about discrimination? If so, do the protections of either statute extend to a lawyer's assistance to an alleged victim of discrimination?

I need not reach the second question because plaintiff cannot prevail on the first. With respect to her § 1981 claim, plaintiff points to no authority suggesting that the protections of § 1981 include conduct by a spouse who engaged in protected conduct. She cites the opinion from the Court of Appeals for the Seventh Circuit in Humphries for the proposition that "a retaliation claim [is] cognizable where the plaintiff [is] associated with the victim of discrimination but [is] not the victim himself," Plt.'s Br., dkt. #7, at 9, but that is a significant overreading of the case. In Humphries, 474 F.3d at 403, the court held only that "individuals who suffer retaliation for opposing the racial discrimination suffered by others have standing to assert retaliation claims under section 1981." Thus, the question is not whether a plaintiff was "associated" with a victim of discrimination but whether she

9

opposed the discriminatory treatment of another. Because plaintiff alleges that it was her husband rather than plaintiff herself who opposed discriminatory treatment, she does not state a claim under § 1981.

The language of § 2000e-3(a) appears to support a similar conclusion: it prohibits the employer from retaliating against an "applican[t]" for protected activity "he" performed. Thus, a literal reading of the statute would not cover conduct by third parties. Plaintiff acknowledges this but cites Thompson v. North American Stainless, LP, 520 F.3d 644 (6th Cir. 2008), and EEOC v. Nalbandian Sales, Inc., 36 F. Supp. 2d 1206, 1210 (E.D. Cal. 1998), which held that Title VII does extend to third-party retaliation claims, despite an absence of textual support. Those courts concluded that a more expansive interpretation was justified by the purpose of the statute, which they believed would be defeated if employers could retaliate with impunity against the friends and family of someone who opposed a discriminatory practice. (The panel opinion in Thompson has since been vacated pending a rehearing en banc.)

The Court of Appeals for the Seventh Circuit once expressed sympathy for the view expressed in Thompson and Nalbadandian, noting that "a literal interpretation of [§ 2000e-3(a)] would leave a gaping hole in the protection of complainants and witnesses" and that it could "not think of any reason . . . other than pure oversight, why Congress should have excluded [third party retaliation] from the protection of section 2000e-3(a)." McDonnell

10

v. Cisneros, 84 F.3d 256, 262 (7th Cir. 1996). More recently, however, in an opinion by the same judge who wrote McDonnell, the court held that a third-party retaliation claim may be brought only if a particular type of agency relationship exists between the plaintiff and the person opposing a discriminatory practice such that the two people could be treated as interchangeable for the purpose of § 2000e-3(a). EEOC v. V & J Foods, Inc., 507 F.3d 575 (7th Cir. 2007). It would be difficult to argue that a marriage is the sort relationship the court had in mind.

In any event, as defendants point out, conduct is not protected by § 2000e-3(a) unless the person complaining about discrimination has a "reasonable belief that he is opposing an unlawful practice." Hamner v. St. Vincent Hosp. and Health Care Center, Inc., 224 F.3d 701, 706-07 (7th Cir. 2000). Even if I assume that Title VII's retaliation provision extends to the actions of a spouse who is the lawyer of a person alleging discrimination, plaintiff cannot overcome the obstacle that Hamner presents. Any belief of discrimination that plaintiff's husband had was unreasonable as a matter of law because the court of appeals concluded that the claim in Jimenez was frivolous.

In her brief, plaintiff concedes that Jiminez was a frivolous lawsuit, but she argues that she should not be punished for the actions of her husband: "Certainly, one should not suffer consequences from actions of another." Plt.'s Br., dkt. #7, at 11. Plaintiff does not appear to appreciate the irony of her position. She cannot argue on the one hand that the

11

lawsuit her husband filed entitles her to protection under Title VII while on the other hand argue that a court must ignore the appellate court's determination that the husband's lawsuit had no merit. The lawsuit is protected conduct or it isn't. There is no basis in the statute or case law to say that the same lawsuit is protected in some instances but not in others.

This leaves plaintiff with nothing left to argue. Either her retaliation claim fails because she relies on the conduct of a third party or it fails because the conduct of that third party is not protected by the statute. Defendants' motion to dismiss must be granted with respect to plaintiff's retaliation claims under § 1981 and Title VII.

### C. Intimate Association

This claim is factually similar to plaintiff's retaliation claim, but it relies on a different legal theory. Plaintiff says that defendants refused to interview or hire her because of her relationship to her husband and that doing so was a violation of her constitutional right of intimate association.

Defendants' response to this claim is somewhat puzzling. First, they mischaracterize the claim as one asserting plaintiff's right to free speech and then fault plaintiff for failing to identify any speech protected by the First Amendment. Because plaintiff's claim stems from her relationship to her husband rather than her speech, this argument is a nonstarter.

Second, defendants say that her intimate association claim fails because it "is

12

derivative of her baseless retaliation claim." Dfts.' Reply Br., dkt. #9, at 6. They go on to argue that plaintiff "fails to identify any conduct by her husband that would be entitled to First Amendment protection." Id. at 7. Again, this is a misstatement of plaintiff's claim. Her claim is not that defendants' refusal to hire her was illegal because her husband exercised his right to free speech. In other words, her claim is not piggybacking on a right of her husband's. Rather, her claim is that defendants violated her own right of association by refusing to consider her for a job as a result of her relationship with her husband. Seen this way, it is irrelevant to plaintiff's claim whether her husband was engaging in constitutionally protected activity.

As even plaintiff acknowledges, it is far from clear to what extent the constitutional right of intimate association protects an employee in the context of the work place. Does it apply it all? If it does, what standard of review should be applied? Should courts apply a standard similar to those in other First Amendment retaliation claims? E.g., Pickering v. Board of Education, 391 U.S. 563 (1968) (in determining whether employer violated employee's constitutional rights, court must balance employee's rights against government's interest in effective government); Connick v. Myers, 461 U.S. 138 (1983) (employee behavior not protected in work place unless it touches on matter of public concern); Mt. Healthy Board of Education v. Doyle, 429 U.S. 274 (1977) (establishing burden shifting framework for work place retaliation claims).

13

It does not appear that the Court of Appeals for the Seventh Circuit has weighed in on these issues directly and courts in other circuits have come to varying conclusions. Adler v. Pataki, 185 F.3d 35, 44 (2d Cir. 1999) (concluding that right of association in work place arises under First Amendment rather than due process clause and suggesting that Pickering balance might be appropriate but it was unnecessary to decide because record did not show that spouses's conduct "threatened the proper functioning" of government); Singleton v. Cecil, 133 F.3d 631, 635 (8th Cir. 1998) (concluding that plaintiff could not prevail on claim for violation of right to intimate association because city's termination of plaintiff "on the basis of his wife's conduct simply did not substantially or directly interfere with Singleton's right to enter and maintain his marital relationship"); McCabe v. Sharrett, 12 F.3d 1558 (11th Cir. 1994) (concluding that employee had right of intimate association in work place and noting several different standards of review but declining to choose one because plaintiff could not satisfy any of them); Adkins v. Board of Education, 982 F.2d 952 (6th Cir. 1993) (concluding that right of association exists in work place, that standard was whether plaintiff was subjected to "undue intrusion" of marital relationship and that standard could be satisfied by termination of employment because of marriage). See also Balton v. City of Milwaukee, 133 F.3d 1036, 1032 (7th Cir. 1998) (stating that Connick-Pickering test would not fit "some associational choices—for instance, whom to marry"—that are purely private matters because it would not be possible to establish that

14

employee's conduct addressed matter of public concern); Yasiri v. Board of Regents of University of Wisconsin System, No. 99-C-51, 2000 WL 34230253, *12 (W.D. Wis. Jan. 28, 2000) (noting that other courts had applied right of intimate association in work place but declining to determine its application because plaintiff could not prove that she lost tenure because of her marriage).

Although the legal merit of this claim is unclear, I need not answer the thorny questions raised by the claim now because defendants do not seek dismissal of plaintiff's claim on the grounds that plaintiff does not have a right of intimate association in the workplace, that being denied a job is not a sufficiently severe intrusion of the relationship to constitute a violation of the right or that whatever right plaintiff had was insufficient to overcome defendants' legitimate government interests. Resolution of those issues will have to wait for summary judgment or trial.

ORDER

IT IS ORDERED that the motion to dismiss filed by defendants Madison Area Technical College, Carol Bassett, William Strycker and Jackie Thomas, dkt. #4, is GRANTED with respect to plaintiff Judy Norman-Nunnery's claims for retaliation under 42 U.S.C. § 1981 and Title VII. The complaint is DISMISSED as to those claims. The motion

is DENIED in all other respects.

Entered this 23rd day of September, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

16